IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| ROGER JAY JONES, II, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) CASE NO. 3:20-CV-005-MHT-CSC |
| HEATH TAYLOR, *et al.*, | ) ) ) |
| Defendants. | ) |

## **RECOMMENDATION OF THE MAGISTRATE JUDGE**

### I.  INTRODUCTION

This 42 U.S.C. § 1983 action is before the court on a complaint filed on January 2, 2020, by Roger Ray Jones, II, a pretrial detainee, who was arrested and held at Russell County Jail on murder charges. He brings claims for violations of his equal protection and due process rights and his right of access to the courts. In support of these claims, he alleges that Defendants failed to secure his home and personal property therein following a search of the premises which resulted in some of his personal property being taken by unknown people. He further alleges that he was not allowed to file charges resulting from this theft and Defendants failed to investigate his complaint because of his status as a pretrial detainee. He names as Defendants Sheriff Heath Taylor, Lt. Jarod Barr, and Chief Deputy William Alexander.

He seeks declaratory and injunctive relief and money damages based on the alleged violations of his constitutional rights. (Doc. 1 at p. 6). Specifically, he asks the court to "order[] Russell County Sheriff's office to file a report and investigate the crime against me." He also asks the court for a "declaration that the acts violated my rights and money damages in form of compensatory and punitive for my property lost and rights violated." *Id.*

The Defendants filed an answer, special report, and supporting evidentiary materials addressing Plaintiff's claims for relief. In these documents, the Defendants deny violating Plaintiff's constitutional rights. (Docs. 28, Exs. 1-4; 34, Exs. 1-6; 38, Ex. 1; 40, Ex. 1).

After the Defendants filed their special report, the court issued an order directing Jones to file a response to the arguments set forth by the Defendants in the report and advising him that his response should be supported by affidavits or statements made under penalty of perjury and other appropriate evidentiary materials. (Doc. 41 at pp. 1-2). The order specifically advised the parties that "at some time in the future the court will treat the defendants' report . . . as a dispositive motion[.]" *Id*. In addition, the order specifically cautioned the parties that "<u>unless within fifteen (15) days from the date of this order a party files a pleading which presents sufficient legal cause why such action should not be undertaken</u> . . . the court may at any time [after expiration of the time for the plaintiff filing a response to the order] and <u>without further notice to the parties</u> (1) treat the special report and any supporting evidentiary materials as a motion for summary judgment, and (2) after considering any response as allowed by this order, rule on the motion in accordance with the law." (Doc. 41 at p. 4.) (Emphasis in original). Robinson filed a response to this order on October 21, 2020. (Doc. 42).

Pursuant to the directives of the orders entered in this case, the court deems it appropriate to treat the Defendants' reports as a motion for summary judgment. Upon consideration of the Defendants' motion for summary judgment, the evidentiary materials filed in support thereof, and the sworn complaint, the court concludes that summary judgment is due to be granted in favor of the Defendants.

## II. FACTS

Plaintiff claims that the Russell County Sheriff's Office failed to secure his residence following their unlawful search of his trailer, which allowed it to be "easily entered." (Doc. 1 at

p. 3). As a result, the Plaintiff alleges that his personal property was stolen out of his trailer and taken to a local pawn shop. (Doc. 1 at p. 4). Plaintiff states that his mother spoke to Defendant Sheriff Heath Taylor at the Russell County Sheriff's Office about the incident and alleges that Sheriff Taylor did not allow her to file a criminal complaint and stated that only the owner of the property could file a complaint. *Id.* Further, he claims that because he has not been allowed to file a criminal complaint, he and his family have been unable to recover the stolen property. (Doc. 1 at p 5).

Plaintiff also alleges that he has written grievances trying to file a report to Sheriff Taylor regarding this matter. (Doc. 1 at p. 5). He further states the jail staff informed him that his grievances were sent to the investigation division at the Russell County Sheriff's Office. Plaintiff alleges that jail staff spoke with Defendant Lt. Jarod Barr and informed him that Jones had written numerous grievances about his property being stolen. (Doc. 1 at pp. 4-5). Plaintiff further alleges that his grievances generally were ignored and given no response. Plaintiff claims that investigators have not spoken with him and ignored his requests and attempts to file a report regarding stolen property from his trailer. (Doc. 1 at p. 5). The Defendants deny these allegations.

The undisputed facts show that Jones was detained by the Phenix City Police Department after a vehicle chase following reports of a shooting at 22 Will Avenue in front of Lot 2, Phenix City, Alabama. (Doc. 19-2, at ¶ 5). He was booked in the Phenix City Jail on February 1, 2019. On this date, Lt. Barr saw the condition of Plaintiff's residence and testified that the trailer did not lock and was not secure. Additionally, he noted that another individual had access to the trailer and appeared to be living on the premises. Further, he reported that the trailer was in significant disarray. (Doc. 19-2, at ¶ 7). Jones was interviewed by investigators

including Lt. Barr. During this interview, Jones stated that he or someone else shot out the windows to his trailer. (Doc. 19-2, at ¶ 6).

Defendant William Alexander, Chief Deputy for the Russell County Sheriff's Office, testified about the operation of the Russell County Jail and specifically the grievance process. He explained that inmates who are booked into the Russell County Jail are provided an identification pin number. (Doc. 28-2 at ¶ 6). Inmates who would like to file a request slip or grievance are to log onto an ATM box which are located in every dorm. *Id.* ¶ 8. When they log onto the ATM box, they are asked to type in their identification pin number. *Id.* ¶ 9. If an inmate specifically wants to file a grievance, they are provided a tab that allows them to choose to whom the grievance should be sent. *Id.* at ¶ 10. An inmate then submits their grievance, and any on-duty supervisor has the authority to review and respond to the inmate's grievance. *Id.* at ¶ 11. If an inmate's grievance pertains to a medical issue, Administrator Johnson forwards said grievance to the medical supervisor for their review and response. *Id.* at ¶ 12. Appeal processes are available. *Id.,* at ¶¶ 13, 14 and 15.

On June 6, Jones addressed a grievance directly to Sheriff Taylor. This grievance was assigned to Chief Deputy Alexander by Assistant Administrator Weatherly. Chief Deputy Alexander responded to this grievance informing Jones that the Russell County Sheriff's Office does not turn away victims wishing to report a crime. Plaintiff stated that he would appeal this response to the Sheriff. Chief Deputy Alexander informed the Plaintiff that he had the right to do so. *Id.,* at ¶ 19. Additionally, investigators regularly met with Jones in an attempt to obtain a coherent story that investigators could act on regarding theft of property. They reported that Plaintiff would change his story and the timeline of when property was alleged to have been stolen. The timelines given by Jones for when property was stolen did not meet the timeline of his incarceration. Additionally, Plaintiff did not consistently identify the stolen items. Thus,

4

investigators concluded Jones was unable to provide a credible and consistent story which would support further action. (Doc. 19-1 at ¶ 7; Doc. 19-2 at. ¶ 9).

Following these regular interviews and communications with Jones, investigators determined that there was not enough evidence presented or alleged by Jones to proceed beyond this stage. Lt. Barr stated this matter was investigated by the Russell County Sheriff's Department to the extent that was appropriate. Because another individual appeared to have access to the residence, which was not secure, and because Jones' complaints were inconsistent, Lt. Barr determined this matter had been fully investigated. (Doc. 19-2, at ¶ 10).

### III. SUMMARY JUDGMENT STANDARD

Under Rule 56(a) of the Federal Rules of Civil Procedure, a reviewing court must grant a motion for summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a). A dispute "is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party. . . . [A dispute] is 'material' if it might affect the outcome of the case under the governing law." *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir. 1996) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The party asking for summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and alerting the court to portions of the record that support the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). However, once the movant has satisfied this burden, the nonmovant is similarly required to cite portions of the record showing the existence of a material factual dispute. *Id.* at 324. To avoid summary judgment, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In determining whether a genuine dispute for trial exists, the court must view all the

evidence in the light most favorable to the nonmovant and draw all justifiable inferences from the evidence in the nonmoving party's favor. *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003); *see* Fed. R. Civ. P. 56(a).

Although factual inferences must be viewed in a light most favorable to the plaintiff and *pro se* complaints are entitled to liberal interpretation, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *See Beard*, 548 U.S. at 525. Thus, a plaintiff's *pro se* status alone does not compel this court to disregard elementary principles of production and proof in a civil case. Here, after a thorough and exhaustive review of all the evidence which would be admissible at trial, the court finds that Jones has failed to demonstrate a genuine dispute of material fact in order to preclude entry of summary judgment in favor of the defendant. *See Matsushita*, 475 U.S. at 587.

### IV.  DISCUSSION

A.   **Procedural Bases for Dismissal of Claims**

   **1.  Plaintiff's Official Capacity Claims Against Defendants**

To the extent Jones sues the Defendants in their official capacities, they are immune from monetary damages. Official capacity lawsuits are "in all respects other than name . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Thus, a state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity or Congress has abrogated it. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) (waiver); *Seminole Tribe v. Florida*, 517 U.S. 44, 59 (1996) (abrogation). "Alabama has not waived its Eleventh Amendment immunity in § 1983 cases, nor has Congress abrogated it." *Holmes v. Hale*, 701 F. App'x 751, 753 (11th Cir. 2017) (citing *Carr v. City of Florence, Ala.*, 916 F.2d 1521, 1525 (11th Cir. 1990)). Accordingly, to the extent Jones sues Defendants in their official capacities, they are entitled to sovereign immunity for claims seeking

monetary damages. *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1277 (11th Cir. 1998) (holding that state officials sued in their official capacities are protected under the Eleventh Amendment from suit for damages); *Edwards v. Wallace Cmty. Coll.*, 49 F.3d 1517, 1524 (11th Cir. 1995) (holding that damages are unavailable from state official sued in official capacity). Therefore, Alabama state officials are immune from claims brought against them in their official capacities." *Lancaster v. Monroe Cty., Ala.*, 116 F.3d 1419, 1429 (11th Cir. 1997). Thus, Defendants are entitled to summary judgment on Jones' claims seeking monetary damages against them in their official capacities.

### 2. Challenge to Robinson's Conviction or Sentence-Heck

Insofar as Jones presents a claim which goes to the fundamental legality of July 23, 2021, conviction and the resulting sentence, he is entitled to no relief on this claim. *Edwards v. Balisok,* 520 U.S. 641, 646 (1997)*; Heck v. Humphrey,* 512 U.S. 477 (1994); *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973). In *Heck*, the Supreme Court held that claims challenging the legality of a prisoner's conviction or sentence are not cognizable in a 42 U.S.C. § 1983 action "unless and until the conviction or sentence is reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus" and complaints containing such claims must therefore be dismissed. *Heck*, 512 U.S. at 489.  The relevant inquiry is "whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence[.]" *Heck*, 512 U. S. at 487; *Balisok*, 520 U.S. at 648 (holding that inmate's claims for declaratory judgment, injunctive relief or monetary damages which "necessarily imply the invalidity of the punishment imposed, [are] not cognizable under § 1983."). The rule of *Heck* is therefore not limited to a request for damages but is equally applicable to an inmate's request for declaratory judgment or injunctive relief. *Balisok*, *supra*.  "It is irrelevant that [the plaintiff] disclaims any intention of challenging his conviction [or sentence]; if he makes allegations that are inconsistent with the [action] having

been valid, *Heck* kicks in and bars his civil suit." *Okoro v. Callaghan*, 324 F.3d 488, 490 (7th Cir. 2003), citing *Balisok*, 520 U.S. at 646–48.

The law is well settled that "habeas corpus is the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement and seeks immediate or speedier release, even though such a claim may come within the literal terms of § 1983." *Heck*, 512 U.S. at 481; *Balisok*, 520 U.S. at 645 (holding that the "sole remedy in federal court" for a prisoner challenging the constitutionality of incarceration on a sentence of a state court is a petition for writ of habeas corpus.); *Okoro*, 324 F.3d at 490 (holding that *Heck* directs that a state inmate "making a collateral attack on the conviction . . . may not do that in a civil suit, other than a suit under the habeas corpus statute."). Moreover, an inmate "cannot seek to accomplish by a section 1983 declaratory judgment what he must accomplish solely through a writ of habeas corpus." *Jones v. Watkins*, 945 F. Supp. 1143, 1151 (N.D. Ill. 1996); *Miller v. Indiana Dept. of Corrections*, 75 F.3d 330, 331 (7th Cir. 1996) (holding that under *Heck*, "[t]he [determinative] issue . . . is not the relief sought, but the ground of the challenge."); *Cook v. Baker, et al.*, 139 F. App'x 167, 169 (11th Cir. 2005) (advising that the "exclusive remedy" for a state inmate's claim challenging the basis for or validity of his incarceration "is to file a habeas corpus petition pursuant to 28 U.S.C. § 2254[.]"). The Supreme Court emphasized "that a claim either is cognizable under § 1983 and should immediately go forward, or is not cognizable and should be dismissed." *Balisok*, 520 U.S. at 649; *Robinson v. Satz*, 260 F. App'x 209, 212 (11th Cir. 2007) (noting that "the Supreme Court [previously] reviewed its prior holdings in this area and summarized that a state prisoner's § 1983 action is barred (absent previous invalidation [of his conviction or sentence])—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—if success in that action would necessarily demonstrate the invalidity of confinement or its

duration.") (cited in *Wilkinson v. Dotson,* 544 U.S. 74, 81–82 (2005) (internal quotation marks omitted).

Under the circumstances of this case, *Heck* and its progeny bar Jones' use of any federal civil action, other than a petition for habeas corpus relief under 28 U.S.C. § 2254, to mount a collateral attack on the validity of his conviction and sentence. *Heck*, 512 U.S. at 489. Specifically, the Supreme Court did "not [did] not engraft an exhaustion requirement upon § 1983, but rather den[ied] the existence of a cause of action. Even a prisoner who has fully exhausted [all] available state remedies has no cause of action under § 1983 unless and until the conviction or sentence is reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus." *Id.*; *Abella v. Rubino*, 63 F.3d 1063, 1066 n.4 (11th Cir. 1995) (holding "*Heck* clarifies that *Preiser* is a rule of cognizability, not exhaustion."). Accordingly, the court concludes that any claim which tests the legality of Plaintiff's conviction and the resulting sentence is not properly before the court and is due to be dismissed.

### 3. Plaintiff's Lack of Standing

To the extent Plaintiff alleges that he has been deterred from filing a criminal action or charges resulting from the alleged theft of property from his trailer by unknown individuals following its search by Defendants, the Plaintiff lacks standing to pursue this claim. Indeed, "[a] private individual does not have standing to demand the criminal prosecution of another individual, let alone standing to prosecute the individual himself." *Davit v. Davit,* 173 Fed. App'x 515,518 (7th Cir. March 29, 2006) unpublished opinion citing *Linda R.S. v. Richard D.,* 410 U.S.614, 619 (1973) and *Johnson v. City of Evanston, Ill.,* 250 F. 3d 560, 563 (7th Cir. 2001). In *Linda R.S, supra,* the United States Supreme Court held that "[a] private citizen lacks a judicially cognizable interest in the prosecution of another." *Id.* at 619. Although this action

could be dismissed based upon a combination of the procedural bases discussed above, the court will hereafter address the Plaintiff's claims on the merits.

### B. Dismissal of Claims on the Merits

#### 1. Access to the Courts

Plaintiff alleges that he has been denied access to the courts because Defendants prevented him from filing charges or a criminal complaint based upon unknown individuals' theft of property from his trailer following its search by Defendants. The United States Supreme Court has held that a state inmate has the right of access to the courts to file a writ of habeas corpus. *Ex Parte Hull,* 312 U.S. 546, 549, 61 S. Ct. 640, 642, 85 L. Ed. 1034 (1941). This claim was later extended to claims filed under 42 U.S.C. § 1983 seeking relief for deprivation of basic constitutional rights. *Wolff v. McDonnell,* 418 U.S. 539, 579 (1974). Indeed, within these contexts access to the courts has been defined as "the opportunity to prepare, serve and file whatever pleadings or other documents are necessary or appropriate in order to commence or prosecute court proceedings affecting one's personal liberty, or to assert and sustain a defense therein, and to send and receive communications to and from judges, courts and lawyers concerning such matters." *Hatfield v. Bailleaux,* 290 F. 2d 632, 637 (9th Cir. 1961). However, Plaintiff fails to include any allegations which could be understood, even with a liberal interpretation, to state such a claim. Rather, the court interprets Plaintiff's claim as one based upon the alleged denial of due process and equal protection under the Fourteenth Amendment. The court will address those claims hereafter.

#### 2. Fourteenth Amendment Claims

The court previously advised Plaintiff that it understood his claim as a "class of one" claim under the Fourteenth Amendment. (Doc. 7, at n. 1). In order to present a claim of discrimination cognizable under the Equal Protection Clause,

"a prisoner must [at a minimum] demonstrate that (1) he is similarly situated to other prisoners who received more favorable treatment; and (2) the state engaged in invidious discrimination against him based on race, religion, national origin, or some other constitutionally protected basis. *Jones v. Ray*, 279 F.3d 944, 946–47 (11th Cir. 2001); *Damiano v. Florida Parole and Prob. Comm'n*, 785 F.2d 929, 932–33 (11th Cir. 1986)."

*Sweet v. Secretary, Department of Corrections*, 467 F.3d 1311, 1318–19 (11th Cir. 2006). "[O]fficial action will not be held unconstitutional solely because it results in a . . . disproportionate impact. . . . Proof of . . . discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 264-265 (1977). "'Discriminatory purpose' . . . implies more than intent as volition or intent as awareness of consequences. It implies that the decision maker . . . selected . . . a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Personnel Administrator of Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979) (footnote and citation omitted); *see also Hernandez v. New York*, 500 U.S. 352, 359 (1991). Evidence which merely indicates disparity of treatment or even arbitrary administration of state powers, rather than instances of purposeful or invidious discrimination, is insufficient to show discriminatory intent. *McKleskey v. Kemp*, 481 U.S. 279, 292 (1987).

  The undisputed facts demonstrate that Plaintiff was detained following a shooting which occurred at 22 Will Avenue in front of Lot 2, Phenix City, Alabama, and a police pursuit which resulted in Plaintiff crashing his vehicle. (Doc. 19-2 at ¶¶ 5-7). Following his detainment, Plaintiff told investigators that his trailer windows had been shot out prior to his arrest. (Doc. 19-2 at ¶ 6). After obtaining a search warrant, investigators found that the door to the residence did not lock and did not appear to be secure. (Doc. 19-2 at ¶ 7). In addition, another person was living on the premises. *Id.* A review of Plaintiff's grievances demonstrates that he attempted to bring a claim for the alleged theft of property to the attention of law enforcement

and that claim was investigated. (Doc. 19-2 at ¶¶ 8-10). Indeed, investigators met with Plaintiff regularly in an attempt to obtain a coherent and consistent story which could be acted upon. (Doc. 19-2 at ¶ 9). However, Plaintiff gave inconsistent timelines and was not able to describe the items he alleged were stolen. (Doc. 19-2 at ¶ 8).

Following a careful review of the record evidence, the court concludes that because Plaintiff failed give investigators a consistent timeline or a description of the property stolen, and the facts demonstrated the presence of another person living at the trailer which was not secure prior to the search, Defendants' actions clearly were rational in relation to the treatment that Plaintiff has received by Defendants following his arrest. Furthermore, the court further concludes that Plaintiff was given ample access to investigators and the opportunity to have this matter investigated. Thus, the court concludes that the information given by Plaintiff failed to warrant investigation beyond what was provided and therefore cannot be considered intentional or arbitrary denial of constitutional rights. Accordingly, summary judgment is due to be granted on the Plaintiff's Fourteenth Amendment Claims.

## V. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. The Defendants' motions for summary judgment be GRANTED.

2. Judgment be GRANTED in favor of the Defendants.

3. This case be dismissed with prejudice.

4. Costs be taxed against the Plaintiff.

On or before **February 23, 2023,** the parties may file objections to this Recommendation. A party must specifically identify the factual findings and legal conclusions in the Recommendation to which the objection is made; frivolous, conclusive, or general objections will not be considered.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar a party from a *de novo* determination by the District Court of factual findings and legal issues covered in the report and shall "waive the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions" except upon grounds of plain error if necessary in the interests of justice. 11th Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE this 9th day of February, 2023.

/s/   Charles S. Coody
UNITED STATES MAGISTRATE JUDGE